UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO.  8:13-cr-256-T-23EAJ
8:14-cv-1723-T-23EAJ

NORRIS HENDERSON
_____/

**O R D E R**

Henderson's motion to vacate under 28 U.S.C. § 2255 (Doc. 1) challenges the validity of his convictions for (1) possession with the intent to distribute twenty-eight grams or more of cocaine base and (2) possession of a firearm in furtherance of a drug-trafficking crime.  Henderson pleaded guilty with the benefit of a plea agreement, and he was sentenced to a total of 168 months' imprisonment. Henderson filed no appeal.

Rule 4, Rules Governing Section 2255 Cases, requires both a preliminary review of the motion to vacate and a summary dismissal "[i]f it plainly appears from the face of the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief . . . ."  *Accord Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980)[1] (finding the summary dismissal of a Section 2255 motion was proper "[b]ecause in this case the record, uncontradicted by [defendant], shows

---

[1] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

that he is not entitled to relief"); *Hart v. United States*, 565 F.2d 360, 361 (5th Cir. 1978) ("Rule 4(b) [Rules Governing § 2255 Proceedings], allows the district court to summarily dismiss the motion and notify the movant if 'it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief . . . .'").

In the motion to vacate Henderson alleges that he was denied the effective assistance of counsel and he challenges both the plea agreement and the calculation of his sentence. The motion to vacate lacks merit.

## **FACTS**[2]

> Pursuant to a search warrant, Norris Henderson's residence was searched on December 19, 2012. The search warrant was based on historical information and a recent purchase of two ounces of cocaine by a confidential informant on November 7, 2012.
>
> A search of the bedroom revealed many items of evidentiary value. A firearm was found protruding from under the carpet in the northwest corner of the bedroom. The gun was identified as a Springfield Armory, Model SAXD, .40 caliber handgun with one round in the chamber. A .40 caliber magazine clip was also found in the bedroom.
>
> In addition to the firearm and ammunition, cocaine was also located in the bedroom. A brown satchel that contained approximately 75 grams of powder cocaine was located under the bed. An additional 100 grams of powder cocaine was located inside of a boot in the closet of the master bedroom. Forty-six grams of crack cocaine were also located in the night-stand located in the master bedroom. A digital scale was also located in the bedroom.
>
> Additionally, two Pyrex glass pots were located in the kitchen. White residue was discovered on the bottoms of the pots. The

---

[2] This summary of the facts is copied from the plea agreement. (Doc. 28).

substance was field tested and yielded positive results for cocaine. Approximately $6,500 was located in the home, as well.

Henderson was read his *Miranda* rights and agreed to speak to agents. The defendant stated that he had gotten the gun from his cousin, Eric Carter. Henderson stated that he knew that he should not have the gun. Additionally, the defendant is a convicted felon.

He relayed to agents that Carter was his source of cocaine and he would receive two or three ounces every two weeks from Carter. He further stated that in and around 2008, he dealt with a "Mexican" named Lee[, who] has been identified as Noe Lee Garza. Henderson stated that he received four to six ounces once a month from Lee for about a year. Additionally, he informed agents that since 2011, he had been selling one to three ounces of cocaine a week.

## **INEFFECTIVE ASSISTANCE OF COUNSEL**

Henderson claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so

> serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Henderson must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691-92. To meet this burden, Henderson must show "a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690-91. Henderson cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)). *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

Although the *Strickland* standard controls a claim that counsel was ineffective for recommending that a client plead guilty, *Hill v. Lockhart*, 474 U.S. 52 (1985), *Agan v. Singletary*, 12 F.3d 1012 (11th Cir. 1994), the quantum of evidence needed to prove

both deficient performance and prejudice is different. "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decided to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). To prove prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 59.

**Ground One:**

Henderson alleges that his trial counsel's performance was (1) "deficient for advocating for the plea agreement" and (2) prejudicial to his defense and violated his rights under the Fifth, Sixth, and Eighth Amendments. Henderson alleges that he "did not willingly accept to mutually agree to an open-plea" but instead insisted on "four defining conditions" that he allegedly wrote onto the plea agreement. (Doc. 1 at 7) He enumerates the proposed conditions as follows (Doc. 1 at 8):

1. I wanna [*sic*] 10 year plea cap.

2. My actually [*sic*] according to the lab results, the actual drug was less than 28 grams.

3. I am guilty of felonious possession of firearm.

4. I am guilty of possession of crack cocaine, less than 28 grams.

Perhaps he proposed these conditions during his discussions with trial counsel, but Henderson initialed each page of the plea agreement (Doc. 28), which contains none of the proposed conditions. The minutes from the guilty plea hearing show that "Defendant took a break to consult with counsel [and] Defendant has decided to continue with the change of plea." (Doc. 23)

After the re-arraignment trial counsel moved to withdraw, in which motion counsel represents (1) that "immediately after the entry of the plea the defendant began demanding that counsel file spurious motions which would have endangered his ability to obtain a sentence reduction for acceptance of responsibility" and (2) that "counsel has an irreconcilable conflict with the defendant . . . ." (Doc. 42 at 1) The motion was granted and Henderson obtained replacement counsel. At sentencing Henderson explained the basis for his disagreement with his original trial counsel (Doc. 57 at 6–7):

> [W]hen I entered the plea, I took the plea, in fact, that Ms. Hale and my past counsel, Mr. Louderback, said that I was pleading out to, a ten-year minimum mandatory, five years for the one count and five years for the other count, which I didn't want to do. I was probably wanting to go to trial on it, but they persuaded me to go ahead and plead out to these ten years. I'll be out in eight and a half or something like that. So me and my mom went ahead and just made the decision and that's what I'm going to go ahead and do.
>
> Then when I got the presentence investigation, I seen that I'm looking at more time than what they said I was pleading out to and I didn't understand that. So I was — that's why I hired another attorney and got rid of Mr. Louderback, because he didn't do everything I was asking him to do in my case. There was a lot of things that I really wanted him to do and I was pushing — like I wanted to pull my plea agreement back within the 14-day period. I was begging him to do that. He would not

> do that. Me and him had several arguments about him doing it. So the time went by and I had to come up with the funds to find another counsel. So by the time I found another counsel, it was too late.
>
> So I really didn't want to plea out to that, but I went ahead and did it, being the fact that it was a ten-year sentence that they were supposedly guaranteeing me I was going to get.

The district court responded to these representations, stating (Doc. 57 at 7–8):

> Well, now, Mr. Henderson, you appeared before the Magistrate Judge, Magistrate Judge Jenkins, for your re-arraignment, that is for her receipt of your plea of guilty, and she explicitly told you what the statutory penalties were and that no one could promise you any particular sentence because your sentence was not determined and that I would determine it today and that you would not be able to withdraw your . . . plea . . . just because you didn't like your sentence.
>
> So there is a minimum term of imprisonment for Count One of five years and a maximum term of 40 years. And the gun term is — for the other count — is consecutive. So all of that was fully explained to you. So if you go to trial on these, unless you've got some meritorious defense, I mean, you just lose your acceptance points and a whole bunch of other things and you wind up with a longer sentence. But that's not my affair to be involved in that, my affair is just to ensure that the re-arraignment proceeding was conducted in accord with the requirements and that you made a knowing and voluntary plea of guilty, which you manifestly did. So that re-arraignment and plea of guilty, which I accepted, I've seen no basis to set that aside . . . .

Proof that Henderson and trial counsel had a "strained relationship" is insufficient to prove ineffective assistance of counsel under *Strickland*, because "there is no Sixth Amendment right to a 'meaningful attorney-client relationship.'" *Morris v. Slappy*, 461 U.S. 1, 14 (1983). Even if defense counsel had promised a certain sentence, an inaccurate sentencing prediction alone will not usually sustain a claim for ineffective assistance of counsel under deficient performance, as explained by

- 8 -

*United States v. Himick*, 139 Fed. App'x 227, 228-29 (11th Cir. 2005) (brackets original), quoting *United States v. Bradley*, 905 F.2d 359, 360 (11th Cir. 1990):

> [A] defendant's reliance on an attorney's mistaken impression about the length of his sentence is insufficient to render a plea involuntary as long as the court informed the defendant of his maximum possible sentence: "To the extent that [a defendant] claimed his guilty plea was based on his attorney's estimate of the sentence and offense level, the claim did not warrant withdrawal of the guilty plea where [the defendant] acknowledged to the court that he understood the possible maximum sentence for his crime to be greater than the sentence the court ultimately imposed."

The plea agreement specifically cautions Henderson that the possible maximum sentence was forty years on count one and a mandatory consecutive sentence of up to life on count two. Any anticipation that Henderson would receive the minimum possible sentence of five years on each count is, based on the quantity of drugs and his criminal history, not realistic. Nonetheless, as discussed at the end of this order, the district court imposed a total sentence that is substantially below the recommended sentence. Henderson's claim in ground one that counsel rendered ineffective assistance lacks merit.

**Ground Two:**

Henderson asserts that the plea agreement is "null and void on its face due to the Principles of Unconscionablity." Henderson asserts that the terms in the plea agreement are "unfair and oppressive" and "unreasonably favorable to the government while precluding meaningful choice for the petitioner." Henderson

objects that the "sentence length is tied directly to the drug amount" and that he "does not conceed [*sic*] to having 28 grams or more of cocaine base." (Doc. 1 at 9)

Unfortunately for him, Henderson had no defense to the charges of possession with the intent to distribute twenty-eight grams or more of cocaine base and possession of a firearm in furtherance of a drug trafficking crime. While executing a search warrant of Henderson's residence, officers found 75 grams of cocaine powder hidden under Henderson's bed, 100 grams of cocaine powder hidden inside a boot in a bedroom closet, 46 grams of cocaine base concealed inside the night-stand, and a fully loaded .40 caliber automatic handgun. Henderson admitted to selling up to three ounces of cocaine each week and admitted to illegally possessing the firearm. Absent the plea agreement, Henderson would have faced an additional charge of possession with the intent to distribute cocaine and would have lost his three-level reduction in sentence based on his acceptance of responsibility.

Contrary to his present contention, Henderson "conceded" to having 28 grams or more of cocaine base." The cocaine base in the night-stand alone was more than 28 grams. Henderson cannot now disclaim the truthfulness of his earlier declarations. "[T]he representations of the defendant . . . [at the plea proceeding] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Henderson's claim in ground two that the plea agreement is a "null and void," "unconscionable," and "unenforceable contract" lacks merit.

**Ground Three:**

Henderson challenges the district court's determination of his sentence under the United States' Sentencing Guidelines and argues that the sentence is invalid under *Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013). Specifically, under *Alleyne* "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt. See *id.,* at 483, n. 10, 490, 120 S. Ct. 2348. Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." Henderson is entitled to no relief under *Alleyne*.

First, Henderson waived the right to challenge the calculation of his sentence when he "expressly waive[d] the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range . . . ." Plea Agreement (¶6 at 17, Doc. 28) The appeal waiver is routinely enforced. *See, e.g., United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993) ("We hold, therefore, that in most circumstances a defendant's knowing and voluntary waiver of the right to appeal his sentence will be enforced by this circuit."), *cert. denied* 513 U.S. 1051 (1994); *United States v. Buchanan*, 131 F.3d 1005, 1009 (11th Cir. 1997) ("Notwithstanding Buchanan's explicit reservation of the right to argue his position about that issue at sentencing, a right that he exercised, the issue was not exempted from the appeal waiver. We enforce the appeal waiver according to its terms.");

*United States v. Grinard-Henry*, 399 F.3d 1294, 1296 (11th Cir.) ("An appeal waiver includes the waiver of the right to appeal difficult or debatable legal issues or even blatant error."), *cert. denied*, 544 U.S. 1041 (2005); *United States v. Rubbo*, 396 F.3d 1330, 1335 (11th Cir. 2005) ("[T]he right to appeal a sentence based on *Apprendi/Booker* grounds can be waived in a plea agreement. Broad waiver language covers those grounds of appeal."). As a consequence, Henderson waived his right to challenge the calculation of his sentence.

Second, *Alleyne* is inapplicable to Henderson's circumstance. *Alleyne* applies only when the determination of a "fact" increases the mandatory minimum sentence. Henderson's recommended minimum sentence was determined under the Sentencing Guidelines and not based on a "fact" that increased a statutory mandatory minimum sentence. Apparently Henderson misunderstands that judicial determination of facts in calculating a guideline sentence is not contrary to *Alleyne*, as *Alleyne*, 133 S. Ct. at 2163, itself recognizes:

> In holding that facts that increase mandatory minimum sentences must be submitted to the jury, we take care to note what our holding does not entail. Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment. See, *e.g., Dillon v. United States,* 560 U.S. ___, 130 S. Ct. 2683, 2692, 177 L.Ed.2d 271 (2010) ("[W]ithin established limits[,] . . . the exercise of [sentencing] discretion does not contravene the Sixth Amendment even if it is informed by judge-found facts" (emphasis deleted and internal quotation marks omitted)); *Apprendi,* 530 U.S., at 481, 120 S. Ct. 2348 ("[N]othing in this history suggests that it is impermissible for judges to exercise discretion — taking into consideration various factors relating both to offense and

> offender — in imposing a judgment *within the range* prescribed
> by statute").

Additionally, as stated above, under the terms of the plea agreement Henderson waived the right to challenge the determination of his sentence "on any ground, including the ground that the Court erred in determining the applicable guidelines range . . . ." *See Williams v. United States*, 396 F.3d at 1342 (enforcing a sentence-appeal waiver even when the challenge is asserted under the guise of a claim of ineffective assistance of counsel).

Third, even if it applied to his circumstance, Henderson would not benefit under *Alleyne* because that decision is not applied retroactively on collateral review. "[B]ecause it is based on the *Apprendi* rule, *Alleyne*'s rule does not apply retroactively on collateral review." *Chester v. Warden*, 552 Fed. App'x 887, 891 (11th Cir. 2014). *See also King v. United States*, ___ Fed. App'x ___, 2015 WL 1898394 (11th Cir. April 28, 2015) ("[N]either *Alleyne* nor *Descamps* apply retroactively on collateral review as required by § 2255(h)(2), and, thus, King's motion was not timely under § 2255(f)(3)."). Henderson's claim in ground three that his sentence is invalid under *Alleyne* lacks merit.

**Ground Four:**

Henderson alleges that, based on his arguments in grounds one, two, and three, the calculation of his base offense level is incorrect. As determined above, the above grounds lacks merit. Henderson contends that his sentence under count one

(possession with the intent to distribute cocaine base) should be no more than sixty months, which is the statutory minimum sentence.

At sentencing Henderson's replacement counsel asserted no "objection for the purpose of the advisory guideline calculation to the offense level of 33 and the criminal history category of III, again as recommended by the U.S. Probation Office" (Doc. 57 at 4), a computation that produces a recommended range of 168–210 months. Henderson is now procedurally barred from asserting an objection to the calculation of his base offense level.

In addition to a sentence under the guidelines, Henderson also faced a consecutive, statutory mandatory minimum sentence of five years for the firearm conviction (count two). As a consequence, a combined sentence of 228 months was the recommended minimum. The total sentence that Henderson serves is actually equal to just the recommended minimum sentence under the guidelines, as the district court explained at sentencing:

> All in all, I have combined the required 60-month consecutive sentence with a 108-month sentence on the Guidelines component for a total sentence of 168, which in point of fact is equivalent to the lower end of the applicable guideline range, exclusive of the gun offense. Without creating an unwarranted disparity, my conclusion is that that is a sentence that recognizes the mitigating factors with respect to this defendant and is the — probably the lowest sentence that I could give him without creating an unreasonable and unwarranted disparity. So I conclude that that sentence is certainly not greater than necessary to accomplish the statutory purposes of sentencing.

Henderson is fortunate that he is not serving a greater sentence. At sentencing the district court described Henderson's circumstance as involving both "a pretty big

quantity [of cocaine base] by local standards" and "a .40 caliber[, which] is obviously not for shooting mice, that's for killing people." (Doc. 57 at 17 and 18)  Henderson waived the right to challenge the calculation of his sentence and the challenge in ground four to the calculation of his sentence lacks merit.

Accordingly, the motion under Section 2255 to vacate the sentence (Doc. 1) is **DENIED**.  The clerk must enter a judgment against Henderson and **CLOSE** this case.

## DENIAL OF BOTH A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Henderson is not entitled to a certificate of appealability ("COA").  A prisoner moving under Section 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  To merit a certificate of appealability, Henderson must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).  Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Henderson is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Henderson must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on June 22, 2015.

/s/ Steven D. Merryday
_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE